152 N.J. Super. 30 (1977)
377 A.2d 755
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN CERBO AND JOHN BENEVENTO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 1977.
Decided July 25, 1977.
*32 Before Judges LYNCH, MILMED and ANTELL.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellants (Ms. Susan Slovak, Assistant Deputy Public Defender, of counsel).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. William F. Lamb, Deputy Attorney General, of counsel).
The opinion of the majority was delivered by MILMED, J.A.D.
Defendants John Cerbo and John Benevento appeal from a denial of their petitions for post-conviction relief.
The essential facts are not in dispute. These defendants, along with a codefendant, Michael Centrone, were charged in one indictment with multiple counts[1] of bookmaking (N.J.S.A. 2A:112-3). Additionally, the three were charged in another indictment with conspiracy to violate the gambling laws of the State (N.J.S.A. 2A:98-1 and N.J.S.A. 2A:98-2). Defendants' pretrial motions to suppress the fruits of a wiretap placed on Centrone's telephone were denied. Following trial, a jury found them guilty of all charges. Their motion for a new trial was denied. Cerbo and Benevento were each sentenced to the State Prison for terms aggregating two to four years. Fines totalling $2,000 were also imposed on each. Their convictions and sentences were affirmed on appeal. State v. Benevento, 138 N.J. Super. 211 (App. Div. 1975). Petition for certification was denied. State v. Cerbo, 70 N.J. 276 (1976). Defendants then filed with the United States District Court for the District of *33 New Jersey their application for habeas corpus relief from the convictions, claiming that the introduction into evidence at their trial of electronic surveillance materials which did not comply with relevant wiretap statutes violated their Fourth and Sixth Amendment rights. As pointed out by Chief Judge Whipple in his opinion of July 25, 1976:
Prior to trial, petitioners moved before Judge Thomas F. Dalton to suppress tape recordings for failure of the prosecution to promptly deliver the tapes to the court for sealing, as required by N.J.S.A. 2A:156A-11, 14. The evidence adduced at the suppression hearing disclosed that the tape in question was held by the investigating authorities for the purpose of making a composite tape for use at trial. The original and composite tapes were delivered to Judge Morris Pashman for sealing some thirty-three days after the date of termination of the wiretap authorization. Judge Dalton denied the motion to suppress, holding that the failure of the law enforcement authorities to comply with N.J.S.A. 2A:156-11, 14 [sic] was a mere "ministerial defect."

* * * * * * * *
Petitioners appealed their convictions to New Jersey Superior Court, Appellate Division. The alleged violation of the wiretap statute was not specifically urged upon the court as grounds for reversal of the convictions. However, in affirming petitioners' convictions, the court did pass on the issue of the legality of the wiretap evidence. State v. Benevento, 138 N.J. Super. 211, 214 (App. Div. 1975). Certification to the New Jersey Supreme Court was subsequently denied.
The federal District Court did not rule on defendants' claim that the trial judge's failure to suppress the wiretap evidence for failure to comply with the sealing provisions of N.J.S.A. 2A:156A-14 rendered their convictions constitutionally invalid. Rather, it dismissed the applications for habeas corpus relief, holding that "As there presently exists a state forum for determination of petitioners' claim,[2] a claim not heretofore considered by the New Jersey appellate courts, petitioners have not exhausted their state remedies."
*34 While their petitions for habeas corpus relief were pending, defendants applied for reduction of their custodial terms. The aggregate term imposed upon Benevento was reduced to one to two years. Cerbo's motion for a reduction of sentence was denied. That denial is the subject of a separate appeal (A-4120-75) which has been disposed of by separate opinion.
On this appeal defendants contend, as they did on their pretrial motion to suppress, that since the State had not, "[i]mmediately upon the expiration of the order" authorizing the interception of wire communications (wiretap), transferred the tapes to the judge who issued the order for sealing under his direction,[3]N.J.S.A. 2A:156A-14, the evidence obtained from the wiretap should have been suppressed. They claim that, in the circumstances, allowing the evidence to be used against them at the trial constituted reversible error and that accordingly, their petition for post-conviction relief should have been granted. We disagree.
We note initially that the ground for relief urged on this appeal could "reasonably have been raised in" the prior appeal to this court from the convictions, R. 3:22-4. It was not.[4] Nonetheless, we proceed, as did the Law Division on the petition for post-conviction relief, to review the merits of the issue. In denying the pretrial motion to suppress, Judge Dalton found that there was a satisfactory explanation for the delay[5] and stated, among other things:
* * * it is the view of this Court, under the facts of this case, that the failure to immediately return the recordings to the issuing judge *35 was a ministerial defect which does not affect the validity of the recordings as evidence. Now, this doesn't by any means warrant any feeling on the part of the State or the prosecution here that I approve of the procedure that was followed by the Prosecutor's Office in this particular case, anything but. And I hope that by now some written instructions have been prepared to insure that in every case the statute or the various sections of the statute will be complied with. I'm satisfied that this delay in filing or submitting to Judge Pashman, which was caused mainly by ignorance and the ignorance caused by the failure of anybody in authority to very specifically direct those involved in the gambling squad and who would be charged with this particular procedure to have properly instructed them as to their duties. It shows a complete lack of intelligent supervision and I think it's about time that this situation is corrected and I'm hoping that it is.
I'm cognizant of the fact that at the time that this particular wire tap was conducted under Judge Pashman's order, you had a sort of a hiatus there in the Prosecutor's Office, you had no Prosecutor, you had the Attorney General's Office handling the affairs of the office. It would appear that since they were I think instrumental in initiating this law initially, that they should have been a little more circumspect in seeing that proper instructions were issued. But I find nothing here to indicate that there was any prejudice to the defendants in the procedure here, nor that there's any indication of any alteration of tapes, anything that would possibly prejudice these defendants. I do not approve of the procedure that had been followed but I do not feel that it is sufficient to warrant a suppression and I find that under 2A:156A-21, the motion must be denied.
We agree. In the circumstances, the motion to suppress was properly denied. N.J.S.A. 2A:156A-21. The purpose of the requirement (N.J.S.A. 2A:156A-14) for prompt sealing of the tapes is to protect their integrity. Here, there was no showing that the integrity of the wiretap recordings was in any way violated, or that there was any prejudice to defendants in the delay in their sealing.
* * * where the trial court has found that the integrity of the tapes is pure, a delay in sealing the tapes is not, in and of itself, sufficient reason to suppress the evidence obtained therefrom. [United States v. Falcone, 505 F.2d 478, 484 (3 Cir.1974), cert. den. Berger v. *36 United States, 420 U.S. 955, 95 S.Ct. 1338, 1339, 43 L.Ed.2d 432 (1975)][6]
See also, United States v. Sklaroff, 506 F.2d 837, 840-841 (5 Cir.), cert. den., 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975); United States v. Poeta, 455 F.2d 117, 122 (2 Cir.1972), cert. den. 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972). Cf. United States v. Gigante, 538 F.2d 502 (2 Cir.1976), involving delays ranging from 8 months, 12 days to 12 months, 25 days.
In United States v. Falcone, supra, the court, addressing itself to the issue "whether the sealing requirement limits the use of interception procedures," pointed out:
The legislative history reveals that the sealing requirement was intended to insure the integrity of the tapes after interception. (Emphasis supplied). 1968 U.S. Code Cong. & Adm. News, p. 2193-2194. The sealing requirement is in nowise "to limit the use of interception procedures ..." Rather, its function is to maintain the integrity of the tapes for evidentiary purposes. We conclude, therefrom, that the sealing requirement is not to limit the use of interception procedures, and, that failure to seal promptly does not render the communication "unlawfully intercepted," and therefore such failure does not necessitate suppression under the statute.
A second consideration strongly supports this conclusion. 18 U.S.C. § 2518(8) (a) provides that the "presence of [a] seal ... or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use ... of any [wiretap] ..."[7] By this provision Congress has provided for an alternative to the sealing requirement. It would follow from such an alternative that failure to seal the tapes promptly is not such a violation that requires suppression as a matter of law. [505 F.2d at 483-484].
While we affirm the orders under review, we emphasize, as did the Court in Falcone, supra, that our determination
*37 * * * does not deprecate the importance of the sealing requirement. Certainly, it should be complied with in all respects. [505 F.2d at 484].
The judgments denying the petitions for post-conviction relief are affirmed.
ANTELL, J.A.D. (dissenting).
The intent of the statute cannot be misunderstood. Upon the expiration of the wiretap order the tapes must be "immediately" delivered to the judge issuing the order and thereafter sealed under his direction. N.J.S.A. 2A:156A-14. In this case, even though 33 days passed before the tapes were sealed, the court holds that the statutory policy was not so offended as to warrant the remedy of suppression. In so ruling it would require defendants to show, as a condition to relief, that the "integrity" of the recordings was in some way violated or that they were in some way prejudiced by the delay in sealing.
In reaching his result one of the trial judges below observed: "Courts have to be practical and have their eyes open to what the realities are." In my judgment the painful reality of this case is that the office of the county prosecutor simply decided to ignore its statutory obligations. Totally absent is anything approaching a satisfactory explanation for its conduct. The reason given for the delay is that it was needed to make a composite of the tapes. But this is palpably incredible, for at the time of the original taping a duplicate original was made which could have been used for this purpose. If it is true, as the State claimed, that the duplicate was imperfect due to musical interference which was absent from the original,[1] a fresh copy could have been made from the first original and the latter then immediately delivered for sealing. Finally, if more time was needed to make the composite, nothing was shown by the State to explain why it did not apply for an extension of *38 the order. Had this been done, the proceedings would have remained under court superintendence as the Legislature intended it should, and the reasonable needs of the State could have been answered.
In any event, even if we overlook these infirmities, and even if we disregard the fact that the composite could probably have been prepared in a day or two, the fact is, by the State's own testimony, that the composite was actually completed no more than a week after the order expired. In the face of this concession, the absence of any explanation for the additional delay of 26 days takes on critical importance. The surveillance, after all, was conducted, not by an untutored rural constable, but by the State's chief law enforcement officer who knew what his duties were under the statute which he himself had invoked.
Central to the majority's holding is the absence of any "showing that the integrity of the wiretap recordings was in any way violated, or that there was any prejudice to defendants in the delay in their sealing." This rationale overlooks the underlying policy of the statute, which is to protect the tapes by providing for judicial supervision of the entire proceeding. The requirement of immediate sealing has vital significance since it aims at foreclosing any opportunity for law enforcement agents to alter the recordings. For all we know, these tapes may well have been altered and defendants prejudiced, but if defendants must actually prove this to obtain relief, there is no purpose to the provision. Certainly, where this is proved there could be little question as to their right to suppression, independent of the statutory provision for immediate sealing. Therefore I cannot avoid the conclusion that the Legislature intended to spare defendants such a burden when it made this requirement a part of the law.
In Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the United States Supreme Court formulated the standards by which wiretap statutes would be measured for constitutional purposes. See also, Katz v. *39 United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Included among these "`precise and discriminate' requirements" were "adequate judicial supervision [and] protective procedures." Berger, supra, 388 U.S. at 58, 60, 87 S.Ct. 1873, 18 L.Ed.2d 1040.
Responding to these decisions which declared invalid under the Fourth Amendment the use of wiretap and eavesdropping devices, Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq. Conscious of the threat to personal liberty and individual privacy inherent in wiretapping, compared to which "writs of assistance and general warrants are but puny instruments of tyranny and oppression", Olmstead v. United States, 277 U.S. 438, 476, 48 S.Ct. 564, 571, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting), this statute contained "sharply detailed restrictions on electronic surveillance, intended to `ensure careful judicial scrutiny throughout' the process of intercepting and utilization of such evidence." United States v. Gigante, 538 F.2d 502, 505 (2 Cir.1976), citing from United States v. Marion, 535 F.2d 697, 698 (2 Cir.1976). "The immediate sealing and storage of recordings of intercepted conversations," the court added, "under the supervision of a judge, is an integral part of this statutory scheme." Gigante, at 505. State wiretap statutes are obliged to conform with the federal legislation as a condition to the admissibility of evidence thereby obtained. 18 U.S.C.A. § 2515.
The New Jersey Wiretapping and Electronic Surveillance Control Act was enacted in 1968, to be effective January 1, 1969, until December 31, 1974. It was later amended to extend its life for an additional four years. L. 1974, c. 183, § 1, eff. December 18, 1974; L. 1975, c. 131, § 12, eff. June 30, 1975. Included therein is N.J.S.A. 2A:156A-14 which, in addition to other safeguards, provides:
Immediately upon the expiration of the order or extensions or renewals thereof, the tapes, wires or other recordings shall be transferred to the judge issuing the order and sealed under his direction.
*40 The pertinent language of the federal statute from which N.J.S.A. 2A:156A-14 is derived provides:
Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. [18 U.S.C.A. § 2518(8) (a)]
In Gigante, supra, the Government made no attempt to justify its failure to comply with this enactment. Rather, it contended that suppression of the tapes was unwarranted since defendants showed no evidence that the tapes had actually been tampered with. The court disagreed. Rejecting the majority view in United States v. Falcone, 505 F.2d 478 (3 Cir.1974), cert. den. 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975), relied on in this court's majority opinion, it reasoned as follows:
To demand such an extraordinary showing, however, would vitiate the Congressional purpose in requiring judicial supervision of the sealing process. Tape recorded evidence is uniquely susceptible to manipulation and alteration. Portions of a conversation may be deleted, substituted, or rearranged. Yet, if the editing is skillful, such modifications can rarely, if ever, be detected. The judicial sealing requirement, therefore, provides an external safeguard against tampering with or manipulation of recorded evidence. The sealed tapes become "confidential court records" and cannot be unsealed in the absence of a subsequent order. When these safeguards are compared with the haphazard procedures employed in this case, the wisdom of Congress becomes manifest. [Gigante at 505; footnotes omitted]
Although the delays involved ranged between 8 and 12 months, the opportunities for alteration were, for practical purposes, no greater than during the span of 33 days shown in this case.
In People v. Scaccia, 55 A.D.2d 444, 390 N.Y.S.2d 743 (App. Div. 1977), certain tapes were not sealed in one case until 19 days and in the other until 15 days after the wiretap orders had expired. The language of the statute there provided: *41 Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions. [CPL § 700.50(2)]
Even though the tapes had been presented within the time prescribed by the issuing judge's order, the court held the late delivery did not conform with the intent of the statute and ordered suppression of the wiretap evidence.
Even though there is no indication that the tape recordings were altered, nonetheless, "(i)t is the potential for such abuse to which we address ourselves," * * *. Duplicate tapes could and should have been made and the originals presented to the issuing judge and immediately sealed * * *. [People v. Scaccia, supra at 746; citations omitted]
Accord, United States v. Ricco, 421 F. Supp. 401 (S.D.N.Y. 1976). See also, People v. Sher, 38 N.Y.2d 600, 381 N.Y.S. 2d 843, 345 N.E.2d 314 (Ct. App. 1976); People v. Nicoletti, 34 N.Y.2d 249, 356 N.Y.S.2d 855, 313 N.E.2d 336 (Ct. App. 1974).
I recognize the concern of my colleagues that the cause of law and order is endangered when evidence is judicially suppressed. But it is the first principle of a constitutionally ordered society that the obligation to obey the laws rests on all alike. Lawlessness begets lawlessness, whether by the police or others, and if we condone defiance of legislated standards by those in authority, then we forfeit our credibility in preaching law and order to the rest. Here the fault of the police is unmistakeable. Excusing this wilful delinquency can be justified on no other premise than that the sovereign can do no wrong. This concept I find distasteful. It offends considerations of justice thought to be basic when the republic was new and in which generations of Americans have since been bred to believe.
In State v. Milligan, 71 N.J. 373, 398 (1976), Judge Conford wrote in his dissent: "There is only the court to assure justice to a defendant. There is the whole executive *42 arm of the Government to enforce law and order." In reaching the result it does in this case, the court has turned away from the great responsibility it holds in trust and ignored the priorities of which these words are a reminder. While it has dutifully registered its proper disapproval of the insolence in office here displayed, experience teaches that such excesses are rarely contained by ritual admonitions. The opinion of the majority will be remembered not for its pro forma re-proof, but as authority for the proposition that "immediately," in this context, means at least 33 days and stands as an invitation to test how much further beyond even this benchmark the legislative intent may be extended. Since this permissive treatment of inexcusable misconduct on the part of those charged with the duty of enforcing the laws is subversive of a genuinely lawful and orderly society I am unable to join with the majority. I would vote to reverse.
NOTES
[1] Benevento and Centrone in 11 counts, and Cerbo in 10.
[2] By way of petition for post-conviction relief.
[3] The monitoring operation ceased on September 7, 1972. Thirty-three days later, on October 10, 1972, the tapes were sealed.
[4] Defendants' counsel on this appeal informs us that "defense counsel [at trial] had written to appellate counsel urging this issue as a main point on appeal," but that "for reasons unbeknownst to defense counsel, appellate counsel failed to do so."
[5] Composing, from the original recordings, three composite tapes of relevant conversations.
[6] Construing the prompt sealing provision of the federal statute, 18 U.S.C.A. § 2518(8) (a), which is similar to that contained in N.J.S.A. 2A:156A-14.
[7] A similar provision is contained in N.J.S.A. 2A:156A-14.
[1] It was never explained how this could have happened.