John CERBO, Appellant,

v.

William H. FAUVER, and Attorney General of the State of New Jersey.

No. 79–2248.

United States Court of Appeals,
Third Circuit.

Argued Feb. 22, 1980.

Decided March 13, 1980.

Thomas S. Higgins, First Asst. Federal Public Defender (argued), Newark, N. J., for appellant.

John J. Degnan, Atty. Gen. of N. J., Trenton, N. J., William F. Lamb, Deputy Atty. Gen. (argued), Div. of Crim. Justice, Appellate Section, Princeton, N. J., for appellee.

Before ROSENN and SLOVITER, Circuit Judges, and LAYTON, District Judge.*

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Appellant John Cerbo appeals from a decision of the United States District Court for the District of New Jersey, denying without an evidentiary hearing his habeas corpus petition brought under 28 U.S.C. § 2254 (1976).[1] In his petition, Cerbo charged, *inter alia*, that he had been denied his sixth amendment right to the effective assistance of counsel in his direct appeal from his conviction in New Jersey state court on gambling related charges. The district court concluded that Cerbo's sixth amendment rights had not been violated. We affirm.

---

* Honorable Caleb R. Layton, 3rd, Senior United States District Judge for the District of Delaware, sitting by designation.

1. 28 U.S.C. § 2254 (1976) provided in part:
   (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall enter-

## I.

Cerbo was convicted in April 1974 of bookmaking and conspiracy to violate New Jersey gambling laws in violation of N.J. S.A. 2A:112–3; 98–1 & 2. Cerbo's conviction was the end result of an investigation of Michael Centrone, a suspected gambling offender, begun in mid-1972 by the Bergen County New Jersey Prosecutor's Office. In carrying out this investigation, the prosecutor obtained judicial authorization to electronically surveil Centrone's telephone line. The wiretap revealed evidence implicating Centrone, Cerbo and John Benevento in illegal bookmaking activities.

The electronic surveillance also produced a bounty of tape recorded conversations. The tapes of the various recorded conversations were removed from the recording machines each day, placed inside their original containers and locked in a storage cabinet. The wiretap authorization expired on September 7, 1972 at which time search and arrest warrants for Cerbo and the others were executed. On September 8, 1972, the tapes were transferred to a steel vault in the chief of county detectives' office for protection.

Over the course of the next thirty-two days, the tape recorded conversations which the prosecutor intended to use at trial were condensed for trial into three tapes. Nicholas Gallo, an investigator in the prosecutor's office signed out the tapes each day, worked in a room specially designed for tape editing and then returned the tapes to the vault. A log of all editing sessions with the tapes was kept and no one besides Gallo had access to the tapes. Although the actual tape editing process consumed only seven to ten working days, the thirty-two day period was caused by the interrupting demands of Gallo's other duties. When the editing was finally completed, the original tapes were transferred to and sealed under court order.

tain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Cerbo, Centrone and Benevento were thereafter indicted on the state gambling charges. They moved in a pre-trial motion to suppress the wiretap evidence principally on three grounds: (1) the tapes had been obtained without probable cause; (2) the prosecutor had not demonstrated the special need required under New Jersey law to wiretap a residential dwelling; and (3) the prosecutor had not complied with the sealing provisions of the New Jersey wiretap law, N.J.S.A. 2A:156A–14. The third argument was based on the following provision in the wiretap law: "Immediately upon the expiration of the [wiretap] order or extensions or renewals thereof, the tapes, wires or other recordings shall be transferred to the judge issuing the order and sealed under his direction."

At a pre-trial hearing, the prosecutor explained that the thirty-two day delay in sealing the tapes was occasioned by interruptions in Gallo's work and that the tapes had been kept carefully and securely during this period. The investigating officers were apparently under the mistaken belief that the wiretap evidence had to be presented for sealing only as soon as practicable. The trial court, after considering the sealing violation argument, denied the motion to suppress, on the ground that there was a satisfactory explanation for the delay. Further, the court noted that the defendants had advanced no claim of tape alteration or tampering and that no prejudice from the thirty-two day delay had been asserted.

The tapes were played for the jury at trial and Cerbo was convicted and sentenced to a term of two to four years in prison and fined $2000. Cerbo then filed a notice of appeal to the New Jersey Superior Court, Appellate Division, on August 14, 1974.[2] R. Jerome Jabbour, an experienced appellate attorney was appointed as counsel for Cerbo. Jabbour filed a brief with the Appellate Division alleging five points of error, including an allegation that the trial

court had erred in denying the motion to suppress the tapes. The basis for the suppression argument, however, was *not* the alleged violation of the sealing requirements under the New Jersey wiretap statute, although Cerbo's trial counsel in a letter to Jabbour had recommended it as one of the grounds for appeal. Cerbo's conviction was affirmed by the Appellate Division on December 8, 1975. *State v. Benevento*, 138 N.J.Super. 211, 350 A.2d 485 (1975).

Cerbo's counsel thereafter petitioned for certification to the New Jersey Supreme Court but did not allege the tape sealing delay as a ground for review. The certification petition was denied on April 1, 1976. *State v. Cerbo*, 70 N.J. 276, 277, 359 A.2d 488 (1976). Cerbo then filed a pro se petition for habeas corpus relief in the federal district court pursuant to 28 U.S.C. § 2254 on April 28, 1976, asserting for the first time "the use and abuse of the original tape over one month contrary to the statute" as a basis for relief. Before the district court conducted a hearing on the petition, the Second Circuit handed down its decision in *United States v. Gigante*, 538 F.2d 502 (2d Cir. 1976), holding that under the sealing provisions of the federal wiretap law, 18 U.S.C. § 2518(8)(a) (1976), delays in sealing of eight to ten months were grounds for suppression of the tape recorded evidence. This decision was contrary to our holding in *United States v. Falcone*, 505 F.2d 478 (3d Cir. 1974) (Rosenn, J., dissenting), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975), that absent a claim of tampering, a sealing delay per se did not constitute a ground for reversal.

The district court ordered memoranda on the import of *Gigante* and on July 28, 1976, dismissed Cerbo's habeas petition for failure to exhaust the New Jersey post-conviction relief procedures on the tape sealing issue. Cerbo then returned to the state trial court and moved for post-conviction relief based on the violation of the sealing provision in the wiretap law. The trial court denied

2. Centrone and Benevento were also convicted and joined in Cerbo's appeal. Inasmuch as neither Centrone nor Benevento are before this court at this time, no further reference will be made to their claims.

post-conviction relief based on its determination that the original trial court decision was sound in light of then-existing precedent. The trial court also questioned the propriety of raising the sealing issue for the first time in a post-conviction relief proceeding when the issue had not been raised on direct appeal, but did not base its decision on this ground.

Cerbo appealed the denial of post-conviction relief to the Appellate Division which affirmed the trial court in a two to one decision filed on October 18, 1976. *State v. Cerbo*, 152 N.J.Super. 30, 377 A.2d 755 (1977). The Appellate Division also noted that the sealing argument was not raised on direct appeal but affirmed on the ground that the trial court had not erred in denying the suppression motion.

After losing in the appellate court, Cerbo filed an appeal as of right with the New Jersey Supreme Court on September 6, 1977. The Supreme Court affirmed the dismissal of the post-conviction relief petition. *State v. Cerbo*, 78 N.J. 595, 397 A.2d 671 (1979). The court indicated that failure to raise the sealing defense on direct appeal was fatal to Cerbo's case and the efficient and fair administration of criminal justice required the dismissal of the post-conviction relief petition. The court, nonetheless, commented that "[h]ad defendants raised this issue on their prior appeal from their judgments of conviction, a reversal would have been warranted." *Id.*, 397 A.2d at 673. Thus, the court viewed the thirty-two day delay in sealing as warranting suppression of the tape evidence.

Although not raised by Cerbo in his appeal, the New Jersey Supreme Court, *sua sponte*, indicated that the failure of Cerbo's appellate counsel to raise the sealing defense on appeal did not constitute a deprivation of Cerbo's sixth amendment right to the effective assistance of counsel. The court noted that at the time of the original appeal, the leading cases had concluded that a sealing delay did not warrant suppression. Thus, any charge of ineffective assistance of counsel would be "a classic example of 'ineffectiveness by hindsight.'" *Id.*, 397 A.2d at 676–77.

Cerbo then filed a second pro se habeas corpus petition under 28 U.S.C. § 2254 in federal court alleging that (1) the sealing delay warranted suppression of the evidence; (2) the "interests of justice" required the New Jersey state courts to grant his petition for post-conviction relief; and (3) the failure of appellate counsel to raise the sealing defense constituted ineffective assistance of counsel. Cerbo filed a memorandum in support of his petition in which he asserted that he had brought the issue of the sealing defense to the attention of his appellate attorney Jabbour, who, despite Cerbo's urgings, failed to raise the issue on appeal. The State in response filed an affidavit from Jabbour indicating that he had fully considered the sealing defense, but because of the adverse case law at the time, had decided not to pursue the issue for tactical reasons on appeal.[3] Jabbour's affidavit further stated that it was his policy to raise issues urged on him by his client even if he personally disagreed with the position.[4]

---

**3.** Jabbour's affidavit read in part: "Without question, I was aware that the issue with respect to the sealing of the tapes had been raised at trial and was discussed at length. My research into the law, however, amply demonstrated to me that an appeal on that issue would not have been successful. As I explained to Messrs. Cerbo and Benevento . . . it was and has been my experience that burdening an Appellate Court with an argument that does not really go to the heart and soul of the appeal, only serves to distract from and irritate the Court about other more important issues. . . . In view of the fact that absolutely no showing had been made that the tapes

had been tampered with, and that the issue was not directly relevant to the guilt or innocence of the defendants, there was not the slightest doubt in my mind that such an issue would not be successful with an Appellate Court and I did not want to . . . detract from what I felt were more important arguments."

**4.** The affidavit stated: "At no time in my career, including this case, have I ever ignored a reasonable request of a client. Where I view a request as unreasonable, I have always offered a client the option of filing a pro se brief with respect to that issue."

The district court, without conducting an evidentiary hearing, denied Cerbo's habeas corpus petition. The court first held that absent a colorable claim of tampering, a mere delay in the sealing of wiretap evidence did not "rise to the constitutional dimension necessary for a writ of habeas corpus." *Cerbo v. Fauver*, 469 F.Supp. 1004, 1007 (D.N.J.1979). There was no such claim by Cerbo. The court next considered Cerbo's argument that the interests of justice required the granting of post-conviction relief by the New Jersey state courts and concluded that the failure to exclude reliable evidence on technical grounds did not offend the interests of justice. *Id.* Last, the court rejected Cerbo's ineffective assistance of counsel claim, agreeing with the New Jersey Supreme Court that Cerbo had failed to demonstrate that his appellate counsel's representation was constitutionally defective. *Id.* at 1008. This appeal followed.

## II.

Cerbo advances two arguments in this court. First, he claims that Jabbour's representation on appeal was constitutionally defective. Second, he argues that the district court erred in denying his habeas corpus petition without conducting an evidentiary hearing. We consider these arguments in turn.

■ The standard in this circuit for evaluating the adequacy of representation under the sixth amendment was set forth in *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970) (en banc): "[T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place." *See United States v. Williams*, 615 F.2d 585, 593 (3d Cir. 1980). Cerbo's central claim is that although the case law may have been unfavorable at the time of his direct appeal, the New Jersey courts had not yet determined what types of delays in tape sealing would constitute a violation of the New Jersey wiretap law. Because the issue was one of first impression, appellate counsel had the obligation to assert it. We disagree.

We do not perceive Jabbour's decision not to raise the tape sealing defense as representation falling below the *Moore* standard. The Tenth Circuit in *Gillihan v. Rodriguez*, 551 F.2d 1182, 1189 (10th Cir.), *cert. denied*, 434 U.S. 845, 98 S.Ct. 148, 54 L.Ed.2d 111 (1977), indicated that "'counsel need not appeal every possible question of law at the risk of being found to be ineffective.'" *See Harshaw v. United States*, 542 F.2d 455, 457 (8th Cir. 1976). The Second Circuit in *Ennis v. LeFevre*, 560 F.2d 1072, 1075 (2d Cir. 1977), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978), added that "decisions concerning which legal issues will be urged on appeal are uniquely within the lawyer's skill and competence, and their resolution is ultimately left to his judgment." Although the tape sealing issue had not been decided by the New Jersey Supreme Court at the time of Cerbo's direct appeal, Jabbour could have reasonably concluded that in light of *Falcone*, a thirty-two day delay, which was satisfactorily explained by the State, would not be grounds for suppression of the tapes. The *Moore* standard stresses the customary skill at the time and place of the representation. Cerbo's tape sealing defense became promising only in light of the Second Circuit's decision in *Gigante, supra*, which was decided after the direct appeal in this case. Hence, we agree with both the New Jersey Supreme Court and the district court and hold that Cerbo has failed to establish a deprivation of his sixth amendment right to the effective assistance of counsel.

We turn next to Cerbo's contention that the district court erred in denying his habeas corpus petition without conducting an evidentiary hearing. Cerbo contends that a factual dispute exists concerning whether Jabbour was urged by him to raise the tape sealing defense. Cerbo notes that the New Jersey Supreme Court's consideration of his constitutional claim took place *sua sponte* and thus the factual issues underpinning the claim have never been fully set forth. Relying on *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1962),

 

Cerbo claims that an evidentiary hearing was required because "the merits of the factual dispute were not resolved in the state hearing."

We do not believe that the asserted factual dispute is of sufficient moment to warrant an evidentiary hearing on the ineffective assistance of counsel claim. Jabbour's affidavit suggests that he was aware of the tape sealing defense and had discussed it with Cerbo. Regardless, we believe that even if Cerbo had vigorously urged the defense upon Jabbour, Jabbour's representation would not have fallen below the *Moore* standard. Assuming all the facts favorable to Cerbo, Jabbour's tactical decision not to raise the defense in the face of what he considered to be more substantial arguments would still be within the acceptable bounds of discretion vested in attorneys in presenting their client's case on appeal.

This case differs from our recent decision in *Williams, supra,* in which we remanded for an evidentiary hearing on whether trial counsel's failure to raise an alleged violation by the Government of the Interstate Agreement on Detainers Act constituted ineffective assistance of counsel. In *Williams,* the IADA defense was made absolute by the statute with the remedy being dismissal of the indictment. There was no evidence from which the district court could have determined why counsel failed to raise the defense. We indicated that "[t]he failure to assert a defense which could result in the dismissal of an indictment may not be the type of decision by trial counsel entitled to the 'measure of latitude and discretion' found by the district court." At 594. In the instant case, we have evidence that Jabbour considered the tape sealing defense yet rejected it because of adverse case law and other valid considerations. Under such circumstances, this decision would fall within the legitimate scope of counsel's discretion and would not present the possibility of an egregious error. We therefore conclude that an evidentiary hearing in this case would serve no useful purpose.

III.

The judgment of the district court dismissing appellant's habeas corpus petition will be affirmed.