Gary Lee ROCK, Petitioner,

v.

**Charles H. ZIMMERMAN, Supt., and Attorney General of Pa., Respondents.**

Civ. No. 81–1167.

United States District Court,
M.D. Pennsylvania,
Scranton Division.

Jan. 25, 1984.

David Rudovsky, Philadelphia, Pa., for petitioner.

John Nelson, Asst. Dist. Atty., Chambersburg, Pa., for respondents.

## OPINION AND ORDER

CONABOY, District Judge.

### I. INTRODUCTION

This action is grounded upon a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Gary Lee Rock is currently incarcerated on the basis of Pennsylvania state court convictions for first-degree murder and attempted murder. When we last addressed Rock's petition,[1] it was to explain our conclusions that four of the five major bases upon which Rock relied would not support a grant of habeas relief.[2] Regarding the fifth and final claim,

---

**1.** *Rock v. Zimmerman,* 543 F.Supp. 179 (M.D.Pa. 1982).

**2.** The four claims under which Rock was denied relief were (1) that his Fifth Amendment rights were violated when a State's witness improperly

that the public defenders assigned to Rock's case rendered ineffective assistance of counsel, we reserved decision pending the results of evidentiary hearings which we subsequently conducted.[3] *See Rock v. Zimmerman,* 543 F.Supp. at 197. In addition to the evidence received at those hearings, counsel have submitted briefs and memoranda in support of their positions;[4] thus, the matter is now ripe for our decision. After a most careful review of all the proceedings in the Pennsylvania courts, and the record in this action, we conclude that Rock's appointed counsel were ineffective insofar as they failed to present evidence of Rock's good character or argue or request a jury instruction on same, and insofar as they failed to file a motion to suppress certain physical evidence. We further conclude that this ineffectiveness was prejudicial enough to Rock's position to create a reasonable doubt that, had such ineffectiveness been absent from the trial, a jury might have arrived at a different outcome. Accordingly, we will grant Rock's petition for a writ of habeas corpus, and we will order that a new trial be conducted within a reasonable time in the Court of Common Pleas for Franklin County. Our analysis and reasoning for doing so follow.

Both the factual and procedural background in this action are sufficiently recited in our previous Memorandum, *Rock,* 543 F.Supp. at 182, and supplemented by this Opinion. To recite the entire history now would be duplicitous. We will, rather, refer to significant events in this case at pertinent times throughout our discussion.

## II. DISCUSSION

We previously set out in this case the scope of review a federal court must subscribe to in reviewing a state court conviction pursuant to a habeas petition. *See Rock v. Zimmerman,* 543 F.Supp. 179, 183–184, (M.D.Pa.1982). Suffice it to say that we are cognizant of the restricted perspective with which we must view Rock's remaining claims.

■ We are also keenly aware of the standard in this Circuit for reviewing claims of ineffective assistance of counsel. "[T]he standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place." *Cerbo v. Fauver,* 616 F.2d 714, 718 (3d Cir.1980), *quoting Moore v. United States,* 432 F.2d 730, 736 (3d Cir.1970) (en banc) (footnote omitted). Such an analysis requires careful consideration of the facts in each particular case. *United States v. Baynes,* 687 F.2d 659, 665 (3d Cir.1982) *citing United States v. Decoster,* 624 F.2d 196, 203 (D.C.Cir.1979). Our analysis does not stop there, however, for even if counsel is found to be ineffective in a given instance, the habeas petitioner must link a potential resultant prejudice to his counsel's inadequacies. "Rather than granting collateral relief outright when a conviction is tainted by ineffective assistance, then, a court should expect the habeas petitioner to demonstrate that there is a 'reasonable

testified about his post-arrest silence; (2) that the trial court wrongly refused to sequester the jury or change venue because of excessive pretrial publicity; (3) that his *Miranda* rights were violated when certain of his statements were introduced at trial; and (4) that the trial court erred in its instructions to the jury.

3. Two (2) such hearings were held, the first on June 28, 1982 and the second on September 24, 1982.

4. In support of his allegation that his appointed counsel were ineffective, Rock posited five (5) specific areas in which he claims they were inadequate: (1) their failure to present good character evidence or to argue or request a jury

instruction on good character; (2) their failure to file a motion to suppress certain physical evidence; (3) their failure to adequately investigate, prepare and present the case; (4) their failure to object to certain statements made by the prosecutor in his closing argument to the jury; and (5) their failure to move for recusal of the trial judge.

The two evidentiary hearings addressed only the first and second claims, i.e., the good character evidence issue and the motion to suppress issue. Although we initially ordered the first hearing, it was at the close of that hearing that a request for another, and an offer of proof in support, were made in order that the good character issue be explored. (See Transcript of September 24, 1982 hearing, pps. 54–59.)

possibility' that had the error of which he complains not occurred, the jury might have arrived at a different outcome." *United States v. Baynes*, 687 F.2d at 670.[5] Thus, it is incumbent upon the habeas petitioner to show not only that his counsel was ineffective, but also that such ineffectiveness, beyond a reasonable doubt, prejudiced the outcome of his trial. *See Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967), and *United States v. Baynes, Id.* Compare *United States v. Crowley*, 529 F.2d 1066, 1070 (3d Cir.1976) *cert. denied* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1977).

■ We stress that determinations of effectiveness are not arrived at with ease. We have painstakingly avoided any notions of "Monday morning quarterbacking". It is neither our function nor intent to second-guess the performance and decisions of Rock's trial counsel. At the same time, however, it is our duty to ensure that his right to effective assistance of counsel, guaranteed him by the Sixth Amendment to the Constitution of the United States, is provided and protected. This encompasses the entire spectrum of the obligations of defense counsel, i.e., the investigation, preparation and presentation of a defendant's case. Each phase of the process is equally important. Brilliant eloquence in the courtroom cannot negate incomplete preparation. *See Moore v. United States*, 432 F.2d 730, 739 (3d Cir.1970). With these firmly established principles in mind, we proceed to Rock's specific claims of ineffective assistance of counsel.

### 1. *Failure to file motions to suppress.*

Rock claims that his trial counsel were constitutionally ineffective in that they "... failed to move for the suppression of physical evidence. This evidence, consisting of soil samples, rifle shells, and other material, was seized by the police from petitioner's property, without a warrant, and without a showing of exigent circumstances, at a time well after the initiation of this criminal investigation." (Rider to p. 7 of Petition for Habeas Corpus). The "other material" referred to in the petition was more specifically described in the Petition's supporting brief as being photographs of the scene of the incident taken by state police, and physical observations recorded by the state police arson investigator, Trooper Randy Kepner.

Positing an argument that all warrantless searches [6] are presumptively invalid save under special circumstances, Rock argues that had his trial counsel filed motions to suppress those items, such motions would have had a solid foundation in both law and fact. Because these items were received in evidence, although illegally obtained, Rock asserts, their presence served to buttress the Commonwealth's theory and argument that he had the requisite intent to commit the crimes he was charged with.

The Commonwealth conversely argues that any motions to suppress the items in question would have been legally and factually baseless. The Commonwealth maintains that the items were seized by the state police under "exigent circumstances" which absolved the investigators of the need for proceeding pursuant to the Fourth Amendment requirement that a warrant

---

5. The Respondents' note in their brief in opposition to Rock's petition that in Pennsylvania, counsel's assistance is deemed constitutionally effective so long as the decision of counsel had some reasonable basis designed to effectuate his client's interest at the time of trial. (Brief in opposition to petition for habeas corpus, p. 7). This same standard was used by the Court of Common Pleas of Franklin County in ruling on Rock's post-trial motions. (Opinion and Order, *Commonwealth of Pennsylvania v. Gary Lee Rock* Criminal Action No. 283 at 1977, pgs.

37–38, C.P. Franklin County, April 30, 1980) (Respondents' Exhibit M). We make no judgment as to the difference, if any, between the standard in Pennsylvania and that espoused by our circuit court in *Moore v. United States, supra* at 737. We only note that our review is governed by the language in *Moore.*

6. It is undisputed that the items that are the subject of this particular argument were all procured without warrants.

issue before any evidence is seized. *See generally Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Commonwealth further maintains that since it did not have to procure any warrants to search Rock's property, then it did not have to justify the searches and seizures in question. The conclusion urged by the Commonwealth is that a motion to suppress such evidence, even if filed, would not have been successful. Thus, it is the Commonwealth's position that Rock's counsel could not be found ineffective because there was no indication in the record that the motion had some chance of success. (Brief in opposition to Petition for Habeas Corpus, p. 10).

In the *Opinion and Order* on Rock's post-trial motions, the Franklin County Court of Common Pleas concluded that the evidence in question was gathered shortly after the incident. "[I]t appears that the investigation was made under exigent circumstances." (Respondent's Exhibit M, p. 53). The post-trial court put the burden on Rock to produce evidence and prove that the seizures in question were not effected under exigent circumstances. The Court also concluded that no reason appeared in the record to justify the filing of a suppression motion. The Court also implied that it would consider such a motion to be fruitless. (Respondent's Exhibit M, p. 53).

We noted when we last addressed this case that we were concerned over the thin factual development in the state court hearing regarding the reasoning behind and potential consequences of the failure to file the motions that are the subject of this claim. *See Rock v. Zimmerman,* 543 F.Supp. at 196. We felt that the state court record on this point did not enable us to arrive at a "... precise understanding of what other testimonial and physical evidence was, or, notwithstanding a suppression motion having been made, would have been properly admitted at trial." *Id.* at 197. That concern prompted the June 28, 1982 and September 24, 1982 hearings.[7] In deciding to receive additional evidence, we

set forth the parameters within which it was to arrive. Specifically, we determined that the state record needed supplementation in order to determine:

(1) whether the failure to fully develop the crucial facts at Petitioner's post-trial hearing was due to the "inexcusable neglect" of Rock's present counsel and, therefore, should bar any further consideration of this issue;

(2) if such neglect was excusable, whether a motion to suppress directed at the physical evidence seized in this case would have had a "solid foundation" both in fact and law; and

(3) even if such a motion would have been successful at the trial level, whether it reasonably can be said that Petitioner's case was prejudiced by his counsel's failure to move for suppression of some of the physical evidence admitted at trial. *Id.* at 196–197.

Regarding the first inquiry, we noted that Rock's present counsel has represented him since the inception of the post-trial state criminal proceedings. *Rock v. Zimmerman,* 543 F.Supp. at 182. During the November 8, 1979 post-trial hearing (Respondents' Exhibit A), Rock's present counsel initiated inquiry of trial counsel about the possibility of a motion to suppress physical evidence taken from the scene of the incident. Development of that line of questioning was disallowed, however. The decision not to pursue that line of questioning, therefore, cannot be solely attributed to Mr. Rudovsky (Rock's present counsel). In light of that, we cannot conclude that the lack of factual development in this area of the case constitutes "inexcusable neglect" on Mr. Rudovsky's part, precluding our consideration of this issue. *See Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). We reject the Commonwealth's contention that Mr. Rudovsky simply chose not to meet his burden of eliciting evidence to support his argument that a suppression motion was meritorious.

---

7. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

We now consider whether a motion to suppress the physical evidence seized had a solid foundation, both in fact and law, and at the time and place of trial. *See Moore v. United States, supra;* and *Rock v. Zimmerman,* 543 F.Supp. at 196, n. 19. Initially, we recall that the parties' positions on this point differed because, *inter alia,* of the Supreme Court's decision in *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), which was rendered shortly after Rock's state trial. *Rock v. Zimmerman, id.* We determined that pre-*Tyler* precedent controlled this issue. *Ibid.* This is significant because Rock's state trial counsel based his decision not to file a motion to suppress the physical evidence on his conclusion that his research in this area of the law indicated that such a motion would have been frivolous. (Respondents' Exhibit A, pgs. 39–40).

At the first hearing held in this Court on June 28, 1982 (Habeas Transcript I) Rock's state trial counsel testified that because the main defense strategy was insanity, "[w]e thought the less we opposed the Commonwealth's evidence would make Mr. Rock's insanity defense that much more credible." (Habeas Trans. I, pgs. 11–12). Counsel also testified that he was well aware that the prosecution's theory was that Rock deliberately poured trails of gasoline to a point somewhere between the two structures on his property, which trails led back to the structures, and that at the particular point where the trails met, he ignited them, eventually causing the buildings to burn. (Habeas Trans. I, pgs. 12–13). Counsel further testified that it would have been advantageous to Rock's defense if evidence concerning the prosecution's "trailer theory" had been suppressed.[8] (Habeas Trans. I, pgs. 13–14).

Upon further questioning, Rock's state trial counsel could not recall the specific legal basis on which he concluded that a motion to suppress the physical evidence secured would be meritless. He did state that review of the Commonwealth's Brief in Opposition to the Petition for Habeas Corpus refreshed his recollection as to the legal considerations employed in that decision process. (Habeas Trans. I, p. 22). However, he did testify that it was his conclusion, upon review of that evidence, that there existed none of the legal exceptions to the general requirement that evidence obtained from a search is admissible only pursuant to a valid search warrant. (Habeas Trans. I, p. 22). We find this testimony to be inconsistent with state trial counsel's other testimony that if he considered such a motion to have any chance of success at all, he should, and would, have filed one. (Habeas Trans. I, p. 17). Evidence of a "trailer theory" would certainly support a conclusion that Rock knew what he was doing when he started the fires. Such a conclusion squarely conflicts not only with Rock's insanity defense, but also with his own recollection of how the fires started. See, e.g., Respondents' Exhibit A, pgs. 71, 95. We conclude that a solid factual basis existed for the filing of a motion to suppress in this case.

We also conclude that a solid legal basis existed on which a motion to suppress could have been filed. As noted, the Fourth Amendment requires that a search of a person's property generally must be performed pursuant to a valid search warrant. *Chimel v. California, supra.* Although some warrantless searches and seizures are justified, such justification must rest on proven "inherent necessities" of the situation in which such searches and seizures are conducted. *Id.* 395 U.S. at 759, 89 S.Ct. at 2038 (citations omitted.).

At our request,[9] the parties filed supplemental briefs on the state of the law gov-

---

**8.** It is Rock's position that the evidence which was admitted in the state trial to support the "trailer theory" is that evidence which should have been suppressed but for his counsel's ineffectiveness, namely, the soil samples, photographs and observations of Trooper Kepner referred to *supra.* Trooper Kepner testified at the second habeas hearing held before this Court on September 24, 1982 (Habeas Trans. II pgs. 2–46).

**9.** *Rock v. Zimmerman,* 543 F.Supp. at 196–197, n. 19.

erning warrantless searches at the time of Rock's trial. Neither side disputes that, "except in certain carefully defined cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The dispute between the parties surrounds the question of whether or not exigent circumstances necessitated entry onto Rock's property and the subsequent seizure of evidence. *See e.g. Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In addition to the exigent circumstances standard, the Commonwealth posits two (2) other legal standards under which it claims that the instant seizures were valid. One concerns a Pennsylvania statute authorizing warrantless searches and seizures; the other rests on a theory that Rock abandoned any privacy interest in his property when he fled into the surrounding hills on the day of the incident.

Although handed down after Rock's state trial, we do not think the Supreme Court's decision in *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) changed in any significant way the state of the law governing searches such as those which took place in the instant case. Our reading of that decision compels the conclusion that the *Tyler* case did nothing more than reiterate earlier standards. *Compare Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1741, 18 L.Ed.2d 930 (1967). Indeed, most recently the Court characterized its decision in *Tyler* as "restate(ment) (of) the Court's position that administrative searches generally require warrants." *Michigan v. Clifford*, —— U.S. ——, ——, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984). Thus, we think the standards announced in *Tyler* were well-established at the time of Rock's state trial, and for some time prior thereto. *See Camara* and *See, supra*. We do not perceive any inequities, therefore, stemming from a consideration of *Tyler* in our analysis of this issue.

The Commonwealth maintains that exigent circumstances existed at the time of the seizures. Trooper Kepner testified as to the circumstances at the scene of the incident on July 2, 1977. See generally, Habeas Trans. II, p. 3. He also testified that shortly after he arrived, and after a search of the surrounding woods, he directed that water be placed on the flames in an effort to knock them down. This was followed by a "fairly superficial" search of the area for bodies. He also ordered, in his capacity as deputy fire marshall, that photographs be taken of the area. The testimony was that photographs were definitely taken on July 2nd and 3rd, and possibly on July 4th. See Habeas Trans. II, p. 6. Trooper Kepner then testified that out of safety concerns, he felt further searches would be best conducted at a later time. Habeas Trans. II, pgs. 6–7. It was the next day, July 3rd, that the more detailed investigation took place and the soil samples were seized. In one of those soil samples, the presence of flammable liquid or an accellerant was detected. Habeas Trans. II, p. 11. That sample was seized more than twenty-four (24) hours after Trooper Kepner arrived on the scene. Habeas Trans. pgs. 3, 11. Fire policemen were posted at the scene on both July 2nd and 3rd, and into the 4th. State trial counsel knew this. Habeas Trans. I, p. 29. The trooper continued his testimony about the investigation. He returned to the scene on both July 3rd and 4th. From notes taken at the scene during the investigation, he constructed a report detailing his findings and conclusions as to the origin of the fire. It was those observations that formed the basis for the trailer theory. The report contained observations which were made at differing times during the investigation, and Trooper Kepner could not recollect exactly when they were all made. Nor could he recall on what date certain pictures were taken. Although he testified that he took the soil samples after July 2nd, he could not remember whether they were taken on the 3rd or the 4th. Habeas Trans. II, pgs. 24–30.

By the time Trooper Kepner's detailed investigation had begun on July 3rd, the area of the incident had been secured, the fire placed under control, and Rock captured.

Either police or fire personnel, and sometimes both, were on the scene around the clock. We conclude that there certainly exists a reasonable doubt as to whether exigent circumstances existed at the scene on July 3rd and 4th. As far as July 2nd, there appears to be little doubt that exigent circumstances were present when the fire and police first arrived at the scene. But we cannot help but conclude that the exigencies of the situation on July 2nd died with the flames. Indeed, it was Trooper Kepner's impression that an investigation would be more efficient and safer on July 3rd. Habeas Trans. II, p. 14. Given the security placed on the scene overnight, and Kepner's preference to postpone his detailed investigation until the next day, we have no difficulty in seeing a solid legal foundation for a motion to suppress, at the very least, the evidence obtained as a result of the July 3rd and 4th searches. The realization of Trooper Kepner, upon his arrival on July 2nd, that a criminal investigation would ensue, *a fortiori* supports our conclusion, for we do not think it unreasonable to suggest that someone of Kepner's experience should be expected to consider applying for a search warrant. We do not think this inconsistent with the *Tyler* decision, *id.* 436 U.S. at 510, 98 S.Ct. at 1950. *Tyler* speaks to remaining in a building for a reasonable time after a fire is extinguished. Here, there is not just a question as to whether a reasonable time elapsed so as to disallow continuing the search *within* the structures of Gary Lee Rock. Some evidence was seized outside the structures. Moreover, in view of all the circumstances, we cannot say that re-entry onto Rock's premises on July 3rd was within a reason-

able time. We therefore conclude that a motion to suppress physical evidence seized at the scene of the incident would have had a solid legal and factual foundation. *See United States v. Hines,* 470 F.2d 225 (3d Cir.1972) *cert. denied* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973).

Additionally, we think it can reasonably be said that Rock's case was prejudiced by his counsel's failure to seek suppression of these items. As noted, Rock's defense was insanity. The Commonwealth maintained that he deliberately set up these "trailers" with which he started the fires. The photographs depicting these trailers, the soil sample containing the accellerant, and Trooper Kepner's observations [10] from his findings, as a result of the July 3rd and 4th searches of the property, all buttress that theory. We find that, had such evidence been excluded, it would have created the possibility of a reasonable doubt concerning the Commonwealth's theory. *U.S. v. Baynes, supra.* Thus, we conclude that state trial counsel's failure to file a motion to suppress evidence gained from the scene of the incident had a solid foundation, legally and factually, and that said failure prejudiced Rock's case.

### 2. *Good Character Testimony.*

Neither side disagrees that, before July 2, 1977, Gary Lee Rock had a good character record. Indeed, evidence was introduced at his state trial of his placid behavior and model citizenship. Respondents' Exhibit M, pg. 54. Rock maintains that his trial counsel's failure: to introduce further good character testimony, to argue good character to the jury, and to request a charge to the jury on good character, was constitutionally inadequate.

The Commonwealth counters that state trial counsel made a reasoned, tactical decision not to pursue the good character element, inasmuch as they felt it to be incon-

---

**10.** Trooper Kepner's testimony revealed uncertainty as to when his observations of the scene of the incident were made and when they were entered into his final report. It appears that some were made on July 2nd, some on July 3rd and some on July 4th. There were observations in the report that were under a designation of a particular date, but it was established that such a designation did not mean that that particular observation was made on that particular date. *See e.g.* Habeas Trans. II, p. 20.

sistent with and/or irrelevant to their strategy of the insanity defense.[11]

■ We find it was constitutionally deficient not to at least argue good character to the jury and request a like charge from the court. Applying our three-pronged approach, as we did earlier, we do not think that the failure to more fully develop the facts at the state post-trial hearing on this issue is attributable to Mr. Rudovsky. See Respondents' Exhibit A, pgs. 46–47, and Respondents' Exhibit M, pgs. 54–55. Next, we think that arguing and requesting a charge on good character had a sound basis.[12] It seems entirely consistent with a defense theory of insanity to argue that a person of normally good character would have to be acting irrationally to commit the acts Rock committed. It does not appear in the least to be unreasonable to suggest to a jury that a person acting out of character, in the circumstances of this case, would not be able to appreciate the consequences of his acts. Moreover, the legal concept that evidence of good character can create a reasonable doubt as to guilt is well-established. Where intent and credibility are decisive factors in a case, "[T]he accused's reputation is of paramount importance. Indeed, evidence of good character may, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of a jury." *Commonwealth v. Luther,* 463 A.2d 1073, 1078 (Pa.Super.1983) (citations omitted). *See also United States v. Logan,* 717 F.2d 84, 88 (3d Cir.1983).

In *Luther* and *Logan, supra,* the Pennsylvania and Third Circuit Appellate Courts, respectively, addressed and thoroughly reviewed the efficacy of character testimony, particularly in regard to a claim of ineffectiveness of counsel, in criminal trials. The central theme of the instructional law in this area, particularly where intent and credibility are important, is that character testimony may be of paramount importance, and standing alone, could raise a reasonable doubt in the minds of the jury. This being so, a decision not to introduce or a failure to introduce such testimony, when it is available, must have a reasonable basis. In such circumstances, certainly the value of such testimony, should, at the very least, be weighed against any potential harm before trial counsel would decide against using it.

The reason proffered for the failure to use character testimony in this case, that it would somehow conflict with the defense of insanity, defies logical understanding and lacks a reasonable judgmental basis.

The element of intent was crucial in this state trial. The Commonwealth argued that Rock deliberately and knowingly acted as he did in order to obtain its convictions on charges in which intent plays a seminal role. Rock's theory was that he did not have the requisite intent to perform as charged; his sole defense was that he did not appreciate the consequences of his acts. Respondents' Exhibit M, p. 32. Thus the issue of Rock's intent was extremely important. Also, an argument to the jury that credible character testimony (even in support of Rock's own credibility), supported the premise that Rock acted out of character on July 2, 1977, is capable of raising an inference that he did not appreciate the wrongfulness of his acts on that date. To put it another way such a move could create a reasonable doubt regarding Rock's sanity at the time the acts were committed. In light of this, we cannot conclude that the failure to argue good character evidence to the jury was harmless beyond a reasonable doubt. *U.S. v. Baynes,* 687 F.2d at 670.

The same analysis applies, and the same conclusion emerges, perforce to Rock's claim that it was ineffective assistance to fail to request a charge to the jury on good character.

---

11. The testimony on this issue in the post-trial state hearing is scant. Respondents' Exhibit A, pgs. 46–47.

12. Indeed, there was a representation to this Court regarding the availability of a number of good character and reputation witnesses, and their willingness to testify as such. (Habeas Trans. I, pgs. 32–33).

Accordingly, we find that state trial counsel's failure to argue good character evidence to the jury, and their failure to request a consonant charge to the jury prejudiced his case. Such omissions create a reasonable possibility that had they been carried out, the jury might have arrived at a different outcome. *Id.*

### 3. Failure to Adequately Investigate, Prepare and Present the Case.

Our analysis and conclusions regarding the first two aspects of Rock's claim of ineffective counsel, *supra,* are necessarily encompassed in the substance of this claim.

### 4. Failure to object to Certain Statements Made by the Prosecutor in Closing Arguments.

■ After carefully reviewing Rock's argument on this aspect of his claim, we cannot conclude that his counsel were ineffective. The explanations proffered for not objecting to certain statements made by the prosecutor are meritorious. Primarily, counsel stated that it was trial strategy not to object, for fear that it would highlight the inferences to be drawn from such remarks, and we find that reasonable. Moreover, as the Commonwealth points out, decisions to make such objections are split-second determinations, lacking the benefit of a written record, and running the risk of accentuating that which may not have been given much credence to begin with. To declare this ineffective would be an exercise in second-guessing. We decline to do so.

### 5. Failure to Move for Recusal of Trial Judge.

■ We have reviewed Judge Eppinger's remarks regarding one of Rock's victims. Having also considered the arguments of the litigants on this issue, we find no ineffective assistance of counsel in not asking the Judge to recuse himself. The remarks made by Judge Eppinger do not carry any connotations of an inability to preside at Rock's trial at anything less than a judicious level. We find no reasonable doubt as to his fairness or objectivity on the bench as a result of this statement. Rock has shown no evidence to support a reasonable doubt that Judge Eppinger's actions affected his ultimate legal judgment. Even if it did raise a doubt, Rock has failed to show that counsel's failure to request recusal prejudiced the outcome of his trial.

### III. CONCLUSION

In view of the foregoing, we conclude that Gary Lee Rock is entitled to the relief he seeks because he did not receive the constitutionally guaranteed effective assistance of counsel during his state prosecution. Thus, the following Order is entered.