**William James RUMMEL**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections.**

**No. SA–76–CA–20.**

United States District Court,
W. D. Texas,
San Antonio Division.

Oct. 3, 1980.

Scott Atlas, Vinson & Elkins, Austin, Tex., for plaintiff.

Douglas Becker, Asst. Atty. Gen., Austin, Tex., for defendant.

## ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS

SUTTLE, District Judge.

William James Rummel is serving a life sentence on his state court conviction of theft by false pretext of a $120.75 check. Two prior convictions were alleged in the indictment for enhancement, so that upon conviction by a jury, he was assessed the mandatory life sentence prescribed in Article 63 of the Texas Penal Code of 1925.

After exhausting his state remedies, Rummel brought this habeas action in fed-

eral court alleging, among other things,[1] that his court–appointed attorney failed to render adequate representation. This court, like the state habeas court, denied Rummel's claim without a hearing. The Fifth Circuit remanded to this district court for an evidentiary hearing to answer, "among others, the question whether Rummel's counsel conducted a pre–trial investigation." *Rummel v. Estelle,* 590 F.2d 103, 105 (5th Cir. 1979). After conducting the hearing, the court finds that Rummel's attorney did virtually no investigation prior to trial, and that he did not render effective assistance of counsel. The application for writ of habeas corpus, therefore, must be granted.

Rummel was accused of taking a check for $120.75 from David Shaw on the pretext that Rummel would repair an air conditioner and install it in Shaw's lounge, Captain Hooks. The broken air conditioner was stored at the Dog Patch, another lounge belonging to Shaw's landlord, Paul Ellis. The $120.75 check was made payable to Service Supply Company, where Rummel was supposed to obtain the compressor necessary to repair the air conditioning unit.

■ In order to prove the offense of theft by false pretext, the state had to show that Rummel obtained the check by false pretext, with the intent to deprive Shaw of the value of the check and appropriate it to Rummel's own benefit. *Redding v. State,* 159 Tex.Cr.R. 535, 265 S.W.2d 811, 813 (Tex.Cr.App.1954). The state had to show that such intent existed in Rummel's mind at the time he acquired possession of the check. An intent subsequently formed would have been insufficient. *Maxwell v. State,* 134 Tex.Cr.R. 314, 115 S.W.2d 939 (Tex.Cr.App. 1938); *see also, Foremost County Mutual Insurance Co. v. North Star Dodge, Inc.,* 542 S.W.2d 270, 272–73 (Tex.Civ.App.–San Antonio 1976, writ ref'd n. r. e.).

Rummel's attorney knew that Rummel's only possible defense was that he did not have the requisite intent at the time he acquired possession of the check. Rummel asserts that his court–appointed attorney should have advanced a defense at trial by presenting evidence of the events surrounding Rummel's acquisition of the check, and of the attempts Rummel made to fix the air conditioner *after* he had possession of the check. His attorney's failure to investigate the defense forms the basis of the ineffective assistance of counsel claim.

■ Reviewing the ineffective assistance of counsel claim on appeal, the Fifth Circuit panel summarized the pertinent law:

A criminal defendant has the right to be represented by counsel "reasonably likely to render and rendering reasonably effective assistance" .... Since "investigation and preparation are the keys to effective representation," ... *court–appointed counsel have a duty to interview potential witnesses and "make an independent examination of the facts,* circumstances, pleadings and laws involved . . . ."

*Rummel v. Estelle,* 590 F.2d 103, 104 (5th Cir. 1979) (citations omitted) (emphasis supplied).

*See generally, Ex Parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980) (en banc). Thus, the court–appointed attorney has a duty to conduct a proper investigation, which, at a bare minimum, includes interviewing potential witnesses, whether suggested by the defendant or listed in the indictment. *Gaines v. Hopper,* 430 F.Supp. 1173, 1178 (M.D.Ga.1977), *affirmed,* 575 F.2d 1147 (5th Cir. 1978). Where a defendant reasonably describes potential witnesses, it is the attorney's responsibility to seek them out, ascertain their value to the defense, and, if appropriate, secure their attendance at trial. *See, Bell v. Georgia,* 554 F.2d 1360, 1361 (5th Cir. 1977).

The attorney appointed to represent Rummel was appointed on this case and on another criminal matter that also carried a

---

1. Rummel also argued that the mandatory life sentence under Article 63 was cruel and unusual punishment when applied to the offenses alleged in the indictment. That claim was ultimately rejected by the United States Supreme Court in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

mandatory life sentence upon conviction. This theft–by–false–pretext case went to trial first.[2] The attorney[3] concedes that besides talking to Rummel, mostly about plea bargaining possibilities, he looked through the prosecutor's files, saw Rummel's thick file in the hot check office, and made a single, fruitless telephone call to Service Supply Company.

Rummel's attorney did not question Rummel carefully about the facts. He did not visit the various scenes and try to restructure, in a chronological fashion, exactly what happened. The attorney filed no pretrial motions and, the court notes, did not make a motion for new trial after conviction. He did not attempt to contact or interview the complaining witness, David Shaw, or any of the other potential witnesses named in the state's files—Paul Ellis and Victor Ochoa, who witnessed the transaction in which Rummel acquired the $120.75 check, and Ada Wesch and Mary Beth O'Brien, the two tellers at the bank where Rummel cashed the check. Nor did the attorney pursue the leads Rummel supplied him on people who witnessed the defendant's later attempts to fulfill his obligation—Tiny, the barmaid at the Dog Patch; Curley, the bartender at Captain Hooks; and perhaps an employee at Montgomery Ward's. He did not obtain witnesses to attest to the fact that Rummel freelanced in the air–conditioner repair field. In addition, although investigators were available at state expense, the attorney did not even submit a request to have one appointed.

The attorney offered several explanations at the evidentiary hearing for his failure to investigate or prepare the case for trial. For example, he declares that he did not think it was the duty of an appointed lawyer "to go out to a bunch of sleazy bars" to look for witnesses. Transcript of Evidentiary Hearing, p. 106. Also, he admits that the fact that he was only paid $250.00 to represent Rummel in this and the other criminal case entered into the balance for not doing more work on the case.

■ The court finds, however, that the predominant reason for the failure to investigate was the attorney's belief that the state's case was "ironclad" and that investigation would not "produce productive results." Transcript of Evidentiary Hearing, pp. 103, 105, 106, 115. The attorney's personal verdict of guilty was founded on Rummel's admission that he fraudulently cashed the check made out to Service Supply Company within hours after receiving it. But "[t]he duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty." *Gaines v. Hopper*, 430 F.Supp. 1173, 1178 (M.D.Ga.1977), *affirmed*, 575 F.2d 1147 (5th Cir. 1978), quoting the American Bar Association's *Standards for the Defense Function*, (App. Draft 1971), section 4.1. Moreover, while cashing the check may have been strong evidence of criminal intent at the time Rummel acquired the check, it is not conclusive evidence of guilt. By his testimony, the attorney revealed that he never understood that proposition:

"—once he cashed the check and didn't buy the air conditioner, what difference did it make–so I didn't inquire any further." Transcript of Evidentiary Hearing, p. 102.

■ The attorney focused on the state's case rather than on his client's case. An

**2.** After conviction in this case, Rummel pleaded guilty to the other case and received a three–year sentence to run concurrently with the life sentence.

**3.** Rummel had only one attorney at the trial, his court–appointed attorney, William B. Chenault III. Another lawyer, Harold Warford, had obtained a nonprosecution statement from the complaining witness upon the request of Rummel's father. (The promised full restitution for the nonprosecution statement was nev-

er received by Shaw. Chenault apparently did not know that full payment had not been made. See Record on Appeal, pp. 158–159). Warford then sat through the trial, observing and perhaps informally assisting Rummel's attorney. This second attorney was not appointed and he received no compensation for his aid in Rummel's trial. He certainly had nothing to do with pretrial investigation or preparation, except for the nonprosecution statement. Later, Warford was appointed Rummel's counsel for appeal.

attorney cannot merely have an understanding and awareness of the state's case, but must also have a like perception of the client's position. *Gaines v. Hopper,* 575 F.2d 1147, 1148 (5th Cir. 1978). The attorney was obligated to investigate Rummel's defense, even though the defense may not have been a strong one, as it was Rummel's *only* defense. In deciding not to develop Rummel's defense on the intent issue, his attorney decided not to put on any defense at all. *See generally, Davis v. Alabama,* 596 F.2d 1214, 1218 (5th Cir. 1979), *judgment vacated as moot,* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980).

Since the state's case appeared to him to be open–and–shut, the attorney believed that his only obligation was to negotiate a plea bargain for Rummel.

> [T]here appeared that there wasn't any reasonable chance that going into the case would do any good, I mean, it was a fairly locked up case anyway, that it wasn't much chance of winning the case— ... *most of my efforts were frankly on plea bargaining and not going into exactly what the facts were.* Transcript of Evidentiary Hearing, p. 99. (emphasis added).

The lawyer "was always under the hope that we'd come up with some kind of agreement at some point in time," and "frankly never expected to try [the case]." Transcript of Evidentiary Hearing, pp. 111 and 223. He visited Rummel in jail three times, but, besides getting the very basic facts from his client, concentrated the discussions on the possibility of a plea bargain. *See, Caraway v. Beto,* 421 F.2d 636 (5th Cir. 1970). In the attorney's own words, "[this case] was one of the best candidates for plea bargaining that I'd ever seen in my life, and that's what I did." Transcript of Evidentiary Hearing, pp. 101–102.

■ The emphasis on plea negotiations was not an unreasonable one, considering the strength of the case against Rummel, the fact that *two* cases were pending against him, and in view of the numerous outstanding hot checks upon which, presumably, Rummel could have been prosecuted.

But, however important a role plea bargaining assumes in an attorney's representation of a client, the attorney must be prepared for the possibility that negotiations might fail and the case might actually go to trial. Certainly, an attorney may not deliberately ignore the investigative and preparative aspects of a case and rely wholly on plea bargaining. Rummel's attorney did just that. According to his own testimony, he had indications as much as a month before trial that Rummel and the state had divergent views on the appropriate sentence. Yet, he walked into the courtroom the morning of trial with no defense prepared, still hoping to make a deal with the state. When he learned that the state would insist on going to trial, the attorney tried in vain to withdraw or gain a continuance. As a consequence of the attorney's dereliction, Rummel went to trial with no defense. A convicted felon, Rummel did not testify on his own behalf.

■ The state points out that most of the evidence Rummel wanted his attorney to present came out anyway through cross–examination of the state's witnesses. But competent cross–examination does not take the place of affirmative defense evidence built upon thorough investigation and preparation. Accordingly, the state prosecutor seized an opportunity in closing argument to highlight Rummel's failure to produce witnesses supporting his contention that he in fact attempted to fix the air conditioner. Furthermore, as the Texas Court of Criminal Appeals noted on appeal, the hearsay testimony adduced through cross–examination had no probative value. *Rummel v. State,* 509 S.W.2d 630, 633, n. 1 (Tex.Cr. App.1974).

■ "When a defense counsel fails to investigate his client's only possible defense, although requested to do so by him; and fails to subpoena witnesses in support of the defense, it can hardly be said that the defendant has had the effective assistance of counsel." *Gomez v. Beto,* 462 F.2d 596, 597 (5th Cir. 1972). *See also, Caraway v. Beto,* 421 F.2d 636 (5th Cir. 1970); *Bell v. Georgia,* 554 F.2d 1360, 1361 (5th Cir. 1977);

*Friedman v. United States*, 588 F.2d 1010, 1016–17 (5th Cir. 1979). This court need not "indulge in nice calculations as to the amount of prejudice" arising from ineffective assistance. *Brown v. Blackburn*, 625 F.2d 35 at 36 (5th Cir. 1980), quoting *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). Suffice it to say that in this factual setting, the court can only find that the total failure of Rummel's lawyer to contact any potential witnesses and to even attempt to investigate the case, prejudiced Rummel enough to require a new trial.[4] *Brown v. Blackburn, supra. See generally, Davis v. Alabama*, 596 F.2d at 1221–1223.

Accordingly, the application for writ of habeas corpus is granted. The respondent, W. J. Estelle, Jr., is ordered to release the prisoner, William James Rummel, unless within the time frame contemplated by the Texas state speedy trial provisions, Tex.C. Cr.P. art. 32A.02, the state conducts a new trial that is free of constitutional infirmities.

So ordered.

---

4. This court's findings and rationale pertain only to the constitutional guarantees of effective assistance of counsel, and are not meant to address the issues that would be presented by a civil suit for damages for malpractice. Particularly, the court does not intend to imply that investigation and preparation would have guaranteed Rummel a not–guilty verdict. *Cf., Jackson v. Urban, Coolidge, Pennington & Scott*, 516 S.W.2d 948, 949 (Tex.Civ.App.–Houston [1st Dist.], 1974 writ ref'd n. r. e.).